## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

| | |
|---|---|
| **CHASITY THARPE** | ) |
| **PLAINTIFF** | ) |
| | ) CIVIL ACTION NO. 3:20CV-451-JRW |
| v. | ) |
| **MANPOWERGROUP US, INC.** | ) |
| **DEFENDANT** | ) |

## COMPLAINT

### I. PARTIES

1. The Plaintiff, Chasity Tharpe (hereinafter "Tharpe" or "Plaintiff"), is an Elizabethtown, Hardin County, Kentucky resident.

2. The Defendant, ManpowerGroup US, Inc.. ("Manpower"), is a foreign corporation operating and conducting business in Elizabethtown, Hardin County, Kentucky.

### II. JURISDICTION AND VENUE

3. This is an action for violations of the Americans with Disabilities Act ("ADA") pursuant to 42 USC §12101 et. seq., the Family Medical Leave Act ("FMLA") pursuant to 29 USC §2601 et. seq, and Kentucky Revised Statutes ("KRS"), Chapter 342.

4. This Court has original jurisdiction pursuant to the provisions of 42 USC §12101 et. seq., 29 USC §2601 et. seq, and KRS 342.197.

5. Venue is proper in this district because the actions giving rise to this Complaint occurred in this judicial district. Further, Defendant, Manpower, operates and conducts business within this judicial district.

### III.  FACTUAL BACKGROUND

6. Tharpe is a former employee of Manpower.

7. Tharpe was employed by Manpower as a Recruiter.

8. Tharpe began her employment with Manpower on approximately October 15, 2017 and was employed with Manpower in excess of two (2) years.

9. Manpower is an "employer" within the meaning of the ADA, FMLA, and KRS 342 at all times relevant to this Complaint.

10. Tharpe was an "eligible employee" within the meaning of the FMLA, at all times relevant to this Complaint.

11. Prior to her employment commencing at Manpower, Tharpe had been diagnosed with bone cancer.  In approximately October 2016, as a result of her bone cancer, Tharpe was required to undergo surgery for the amputation of her left leg.

12. At the time of her hire at Manpower, Tharpe was able to walk without any need for accommodation due to her use of a prosthetic leg.

13. On June 12, 2019, while walking with the assistance of a cane in Manpower's women's restroom, Tharpe fell and injured the top portion of her left leg, specifically where her prosthetic leg joined to her stump, as well as her lower back and left hip.

14. Tharpe's fall and injury occurred due to the flooring in Manpower's women's restroom, which had buckled upwards and was not a flat walking surface.

15. Immediately following her workplace injury, Tharpe notified Manpower's Branch Manager, Christine Gregerson (hereinafter "Gregerson"), regarding her workplace injury, which had occurred in the women's restroom due to the dangerous condition of the floor.

16. The following day, June 13, 2019, Tharpe was seen and treated at Hardin Memorial Hospital for her workplace injuries.

17. Tharpe was diagnosed with a lumbar spine strain, acute hip pain on her left side, swelling to her stump, as well as stump pain and other complications of her amputated stump in her left leg. [A copy of the June 13, 2019 Emergency Department Excuse Slip is attached hereto as Exhibit "1"].

18. Tharpe was ordered to be excused from work for four (4) work days, until June 20, 2019.

19. During her hospitalization on June 13, 2019, the triage nurse called Gregerson to confirm that Tharpe's injury occurred in the workplace, and thus would be qualified as a workers' compensation claim. Gregerson confirmed that it was a workplace injury.

20. Following her discharge from the hospital, Tharpe notified Gregerson of her requirement to be off work until June 20, 2019.

21. Due to the fact that it was a workplace injury, and thus Manpower's workers' compensation insurance was required to pay for Tharpe's medical costs, Tharpe was directed to be seen at Heartland Urgent Care for examination and medical treatment.

22. On June 20, 2019, Tharpe was seen at Heartland Urgent Care, where her diagnoses of lumbar strain, left hip strain, and left leg contusion were confirmed. Additionally, Tharpe was released to return to work at Manpower with "Modified/Light Duty" restrictions of "primarily sitting work" and that Tharpe "must be able to use [a] wheelchair." [A copy of the Heartland Urgent Care Discharge Instructions are attached hereto as Exhibit "2"].

23. Upon Tharpe informing Gregerson of her release to return to work with restrictions of having to be in a wheelchair, Tharpe was informed that Manpower's Human Resources department stated that it would not accommodate Tharpe's reasonable request to use a wheelchair in the office.

24. On June 20, 2019, after multiple requests for Manpower to fill out and submit an incident report regarding her workplace injury, Tharpe received an email from Gregerson with a blank "Associate's Report of Injury" form to fill out.

25. Tharpe immediately filled out the incident report and emailed it to Gregerson, requesting that Gregerson in turn submit it to Manpower's workers' compensation insurance carrier. [A copy of the Report of Injury is attached hereto as Exhibit "3"].

26. Following Manpower's unreasonable denial of Tharpe's request for accommodation, Tharpe worked from home for approximately one (1) week.

27. On June 28, 2019, Tharpe's physician removed her from work until July 1, 2019, and stated that she could return to work on that date so long as she was using her wheelchair. Additionally, Tharpe's physician ordered that she needed to stretch her back every two (2) hours due to her lumbar strain. [A copy of the Return to Work note is attached hereto as Exhibit "4"].

28. On approximately June 29, 2019, due to the fact that Gregerson still had not submitted Tharpe's Report of Injury to Manpower's workers' compensation insurance carrier, Tharpe made a formal complaint regarding the unnecessary delay to Manpower's corporate Human Resources department.

29. Ultimately, Gregerson did not submit Tharpe's injury report until approximately July 12, 2019, more than three (3) weeks after Tharpe had filled out and submitted the injury report form to Gregerson.

30. Due to the fact that Manpower refused to allow Tharpe to return to work with a wheelchair, although she was ready, willing, and able to perform her job duties, Tharpe was not allowed to return to Manpower until she was fully released without restrictions on August 1, 2019.

31. Tharpe returned to work on August 1, 2019, and performed her job duties in a satisfactory manner.

32. In approximately mid-October 2019, Gregerson presented Tharpe with a performance improvement plan (hereinafter "PIP") due to Tharpe "not hitting her numbers."

33. Tharpe objected to the PIP, as it penalized her for her absences, which were directly due to her workplace injury and medical leave.

34. Manpower did not take into consideration the reason that Tharpe did not meet her "numbers" was because she was out on medical leave following her workplace injury and filing of a workers' compensation claim.

35. At the end of October 2019, after undergoing multiple medical tests, Tharpe was ordered by her physician to stop working due to a large, potentially cancerous, cyst being found on her ovary. Additionally, Tharpe was informed that she would be required to undergo surgery to remove the cyst on December 26, 2019.

36. Following her diagnosis, need for medical leave, and impending surgery, Tharpe notified Manpower of the same and requested medical leave through the Family Medical Leave Act ("FMLA").

37. Approximately one (1) week before her scheduled surgery, Tharpe was notified that the surgeon was no longer employed by the hospital where she was scheduled for surgery, and therefore her surgery would need to be rescheduled.

38. On December 27, 2019, Tharpe was informed that her new surgery date was scheduled for February 12, 2020, but that she was released to return to work on December 31, 2019, with the requirement that she use two (2) crutches at work.

39. Tharpe returned to work at Manpower on December 31, 2019

40. Upon her return, she immediately requested to recertify her medical leave under the FMLA from being designated as continuous leave to intermittent leave, as Tharpe knew she had multiple doctor's appointments to attend to, prior to her February 12, 2020 surgery.

41. On January 2, 2020, Tharpe submitted her intermittent FMLA leave request, which she was informed would be a completely separate claim. [A copy of Tharpe's FMLA Acknowledgement paperwork is attached hereto as Exhibit "5"].

42. A few days after submitting her intermittent FMLA leave paperwork, Gregerson called Tharpe and asked her, "Are you going back out on leave?"

43. Tharpe informed Gregerson that Tharpe had recertified her FMLA paperwork due to upcoming doctor's appointments, but that she was not taking continuous medical leave until February 12, 2020 for her surgery.

44. On approximately January 20, 2020, Gregerson presented Tharpe with the same PIP from October 2019, again stating that Tharpe had not been "hitting her numbers."

45. Like in October 2019, Tharpe objected to the PIP, due to the fact that it did not take into account that she had been on legally protected medical leave.

46. On January 30, 2020, Gregerson terminated Tharpe's employment from Manpower, effective immediately.

47. At the time of her termination, Gregerson was fully aware and knowledgeable about Tharpe's recent re-certification for medical leave under the FMLA, diagnosis of a large, potentially cancerous cyst on her ovary, and upcoming surgery date of February 12, 2020.

48. Manpower terminated Tharpe within close proximity of Tharpe filing a workers' compensation claim against the company.

49. Manpower terminated Tharpe within close proximity of Tharpe returning from medical leave following her workplace injury and worker's compensation claim.

50. Manpower terminated Tharpe four (4) weeks after Tharpe had submitted her request for intermittent medical leave under the FMLA.

51. Tharpe's diagnoses of being an amputee, complications of her amputated stump in her left leg following her workplace injury, and a potentially cancerous cyst being found on her ovary, which required surgical removal constitute a disability and/or disabilities under the American with Disabilities Act ("ADA") pursuant to 42 USC §12102 et. seq. and a "serious health condition" under the Family Medical Leave Act ("FMLA"), 29 United States Code § 2601 *et. seq.*

52. Manpower failed to accommodate Tharpe's disabilities and wrongfully discharged Tharpe.

53. Manpower was aware of Tharpe's disability and/or disabilities prior to discharging her.

54. Manpower perceived and regarded Tharpe as having a disability and/or disabilities prior to discharging her.

55. Manpower terminated Tharpe due to her disabilities and/or request for and exercise of FMLA leave.

56. Manpower terminated Tharpe in retaliation for her filing a workers' compensation claim in violation of KRS 342.197.

57. Following her termination, Manpower replaced Tharpe with a non-disabled employee.

## IV. CLAIMS AND CAUSES OF ACTION

### A. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ DISCRIMINATION ON THE BASIS OF AN EMPLOYEE'S DISABILITY

58. Tharpe re-alleges all allegations contained in paragraphs 1 through 57 above as if fully set forth herein.

59. Manpower terminated Tharpe's employment on the basis of a disability and/or a "perceived" disability and/or a "regarded as" disability in violation of 42 USC §12101 et. seq.

60. As a result of Manpower's violations of the ADA, Tharpe has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

### B. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ EMPLOYER'S FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

61. Tharpe re-alleges all allegations contained in paragraphs 1 through 60 above as if fully set forth herein.

62. Tharpe was a qualified individual with a disability and/or disabilities under the ADA, 42 USC §12101 et. seq.

63. Manpower failed to reasonably accommodate Tharpe's disability and/or disabilities in violation of 42 USC §12101 et. seq.

64. As a result of Manpower's violations of the ADA, Tharpe has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

### C. VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (INTERFERENCE)

65. Tharpe re-alleges all allegations contained in paragraphs 1 through 64 above as if fully set forth herein.

66. Tharpe was an eligible employee under the FMLA and at the time of her leave request, Tharpe had been employed by Manpower for at least twelve (12) months.

8

67. Tharpe requested leave for her own serious health condition(s).

68. Tharpe was entitled to receive leave pursuant to the FMLA.

69. Manpower's actions, as set forth above, constitute interference in violation of the FMLA.

70. As a result of Manpower's violation of the FMLA, Tharpe has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### D. VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (RETALIATION)

71. Tharpe re-alleges all allegations contained in paragraphs 1 through 70 above as if fully set forth herein.

72. Tharpe was an eligible employee under the FMLA.

73. Manpower retaliated against Tharpe by terminating Tharpe for requesting and exercising her right to medical leave through the FMLA.

74. Manpower's actions, as set forth above, constitute retaliation in violation of the FMLA.

75. As a result of Manpower's violation of the FMLA, Tharpe has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### E. VIOLATIONS OF KRS 342.197

76. Tharpe re-alleges all allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

77. Manpower discharged Tharpe in violation of the anti-retaliation provisions of Kentucky Revised Statutes, Chapter 342 *et. seq.*, and KRS 342.197.

78. As a result of Manpower's violations of KRS 342, Tharpe has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

    **F.**    **MANDATORY RECOVERY OF ATTORNEY'S FEES AND COSTS**

79. Tharpe re-alleges all allegations contained in paragraphs 1 through 78 above as if fully set forth herein.

80. Tharpe is mandatorily entitled to recover her attorney's fees and costs pursuant to the provisions of the ADA, the FMLA, and KRS 342.

    **V.**    **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, Chasity Tharpe, respectfully prays that she be awarded the following relief and all other relief to which she may be entitled against the Defendant, ManpowerGroup, US, Inc.:

    A.    Trial by jury;

    B.    Judgment against Defendant on all claims asserted herein;

    C.    Compensatory and actual damages including but not limited to past and future lost wages and past and future lost benefits;

    D.    Compensatory damages including but not limited to emotional distress, mental anguish, humiliation and embarrassment;

    E.    All statutory remedies provided by the ADA, FMLA, and KRS 342;

    F.    Liquidated damages pursuant to the FMLA for Defendant's willful violations of the FMLA;

    G.    Equitable relief in the form of reinstatement, promotion and/or front pay;

    H.    Punitive damages to punish and deter similar future unlawful conduct;

    I.    An award of statutory attorney fees, expert witness fees, costs and expenses;

    J.    Statutory interest on all monetary damage awards, verdicts, or judgments; and

    K.    All other and additional relief to which Tharpe may be entitled.

Respectfully submitted,

THE ZOPPOTH LAW FIRM


/s/ Bradley S. Zoppoth
Bradley S. Zoppoth
6510 Glenridge Park Place, Suite 1
Louisville, KY 40222
(502) 568-8884
bsz@zoplaw.com
*Counsel for the Plaintiff, Chasity Tharpe*

11